THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

MARGARET FITZGERALD, ADMINISTRATRIX.

*Master and Servant—Negligence of Master—Personal Injuries— Recovery for—Fellow-servants—Evidence.*

1. The question as to whether parties are fellow-servants is a mixed one of law and fact. The facts may be such as to establish as a matter of law that parties are, or are not, fellow-servants; and they may also be such as to leave the question one of fact to be determined under proper evidence and instructions by the jury.

2. In actions brought for the recovery of damages alleged to have been occasioned by the negligence of employers, all evidence tending to show the consociation of the plaintiffs with other servants, should be admitted.

3. Evidence should not be received as to acts of negligence not charged in the declaration, in a given case.

[Opinion filed May 5, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. J. P. ALTGELD, Judge, presiding.

Messrs. HERRICK & ALLEN, for appellant.

Mr. EDMUND FURTHMANN, for appellee.

WATERMAN, J.  This action was brought to recover the
pecuniary loss sustained by the widow and next of kin of
James Fitzgerald, who was killed while working for appel-
lant.

The deceased was one of some twenty men who worked
with four engines moving empty and loaded cars, distributing
them to yards and manufactories, and making up trains in the
lumber-switch yard of appellant in Chicago.  This yard was
some three miles in length.  Working with the four engines
engaged during the day, were four engineers, four firemen,
four head switchmen and eight assistant switchmen.

The usual course was that each morning the four engineers
and four firemen were assigned to different engines at the
roundhouse.  They would not have the same engines every
day, but would be assigned to different engines on different
days.  They would then take the engine down to the West-
ern Avenue yard.  The twelve switchmen would meet every
morning at seven o'clock at the Western Avenue yard.
There, on the arrival of the engines from the roundhouse,
they would be assigned to the particular engine with which
they were to work for the particular day—one head switch-
man and two assistant switchmen or helpers to each engine.

The deceased had, during the four weeks he had been in
the service of appellant, worked with Latham, who was the
engineer of the train which ran into the one with which
deceased was working at the time he was killed.  Deceased
had also, upon other days, worked with Mahon, who was the
head switchman upon Latham's engine at the time of the
accident.

There was evidence that if a crew, the men attached to the
engine, had fifty cars to distribute, another crew had to assist
if it was necessary; that this was not always necessary; that
the situation of the tracks might be such that one engine
could not place the cars in a certain place, and it would require

the assistance of another engine to do it; that when one crew was to assist another, the yardmaster, if present, directed it, if not, it was done by the mutual understanding of the two crews.

The witness who had thus testified, was then asked what other instances of co-operation there were between the different switching crews in the lumber district. This question the court refused to allow the witness to answer, and the defendant excepted.

It is difficult to see why the court did not permit an answer to this question.

In the leading case in this State upon the question of when parties are to be considered fellow-servants, the Supreme Court said: "Where servants are habitually consociated in their daily duties (as most servants were at an earlier day in England), they may well be supposed to have an influence over each other, and a power to promote in each other caution, by their counsel, exhortation and example, at least equal to that of the master, and perhaps greater.   *   *   *

"But where servants of a common master are not consociated in the discharge of their duties—where their employment does not require co-operation and does not bring them together or into such relations that they can exercise an influence upon each other promotive of proper caution—in such case, the reason of the rule holding the master responsible for damages resulting from the negligence of one of his servants seems reasonably to apply with as great force as if a stranger were the party injured. The influence of one servant upon another, in the encouragement of caution, can not be relied on in such case, for that can only operate where they are co-operating or are brought together by their usual duties, or where there is habitual consociation." C. & N. W. Ry. Co. v. Moranda, 93 Ill. 315.

This language is, in part, repeated in the same case in 108 Ill. 576. To the same effect are the cases of Abend v. T. H. & I. R. R. Co., 111 Ill. 203; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383, and Stafford v. C., B. & Q. R. R. Co., 114 Ill. 244.

C., B. & Q. R. R. Co. v. Fitzgerald.

Counsel for appellee say that the rule is that parties are fellow-servants only when "their mutual duties bring them into *habitual* consociation." This is directly opposed to the rule announced in Abend v. T. H. & I. R. R. Co., *supra*, in which the court hold that the head blacksmith of the road, who was killed in consequence of the negligence of one Busse, acting as the conductor and engineer of a train carrying to the scene of an accident a wrecking force, hastily made up of whatever employes happened to be within convenient reach, being at the time engaged with Busse in a common employment, viz., removing a wreck, was a fellow-servant with said Busse, notwithstanding in their ordinary employments they might have no connection with each other. But, if the rule were as contended by counsel for appellee, why should not appellant have been permitted to show all acts of co-operation in order to establish, if it can, habitual consociation?

We are not prepared to say that the evidence in this case established that the deceased and the crew of the engine, of which Latham was the engineer, were fellow-servants.

The question as to whether parties are fellow-servants, is a mixed one of law and fact. The facts may be such as to establish, as a matter of law, that parties are or are not fellow-servants; they may also be such as to leave the question one of fact, to be determined under proper evidence and instructions by the jury.

A majority of the court regard the record of this case as presenting a question in this regard, which should be submitted to a jury; but all evidence tending to show consociation should, in accordance with the rule announced in C. & N. W. Ry. Co. v. Moranda, *supra*, be admitted; and the court is unitedly of the opinion that the witness should have been permitted to answer the question asked as to " other acts of co-operation."

The witness Putnam, the yardmaster under whose supervision the deceased worked, was permitted, against the objections of appellant, to testify that he sent no one back to the hind end of the train the deceased was working at, to flag a

coming train; counsel for appellee also argued to the jury that such failure of Putnam to send a man back was negligence, for which appellant was responsible.

No such claim was set up in the declaration, and consequently no such evidence should have been received or argument made. Nor should it, for the same reason, have been argued to the jury that the company was bound to furnish the deceased with a reasonably safe place to work in.

For the errors indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*