ANSON WOLCOTT ET AL.

v.

JOSIAH B. REEME.

*Gaming—Options—Action by Broker to Recover Losses Sustained on Board of Trade—Evidence—Instructions.*

1.  In an action brought by a broker to recover for losses sustained in the purchase of rye for future delivery, where the main question was as to whether the broker was authorized by defendants' firm to make the purchase, *held*, first, that the jury were justified in finding that the broker was authorized to make the purchase in question on defendants' account, and second, that the jury were correctly instructed.

2.  Language used by the Supreme Court in an argument in one case is not necessarily proper language for an instruction to the jury in another case.

3.  The court below correctly refused to instruct the jury that if the methods adopted by the plaintiff were too intricate and tortuous to be explained to the full comprehension of the jury, the verdict should be against him.

[Opinion filed March 19, 1892.]

ERROR to the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Messrs. BISBEE, KERN & REED, for plaintiffs in error.

Messrs. ULLMANN & HACKER, for defendant in error.

GARY, J. Anson Wolcott is the father of Eben H. Wolcott and Henry W. Wolcott, and the three were partners in the grain business in Remington and in Wolcott, Indiana. There was conflicting testimony as to conversations between Anson Wolcott and Reeme about dealings by the firm on the Board of Trade in Chicago, Reeme being a commission dealer on the board. One undisputed fact is that on the order of Henry W. Wolcott, Reeme did sell on account of the firm, in October, 1888, 20,000 bushels of corn for future delivery, which the firm never did, in fact, deliver, but bought in, after the manner that is called business on the board. This transaction, on which there was a profit, had the assent of Anson. In the same month and the next, under the orders of Henry W., either in person or by correspondence, Reeme bought for account of the firm, rye for future delivery on which there was a loss, and that loss is the subject of this suit, Reeme being the plaintiff below.

The defense by Anson Wolcott, the only one served be-

low, and against whom alone the judgment is, though this writ of error is prosecuted in the names of the three, is that this transaction was outside of the business of the firm; that he had no knowledge of it until after the loss had been incurred, and therefore is not responsible for the loss. Whether it was outside of the business which he had represented to Reeme that the firm intended to transact on the board through Reeme, was a question of fact settled by the jury upon evidence enough to justify the verdict. After the manner of the board before referred to, these purchases of rye seem to have been what, in the slang of the board, is called, "rung up," a mode of doing business which in Pickering v. Cease, 79 Ill. 328, was regarded as very objectionable, but which, when fairly understood, as in Oldershaw v. Knowles, 4 Ill. App. 63, is legitimate, though very difficult to trace through and explain. Same case after two more trials, 101 Ill. 117.

The questions of law in the case are: First. That in the instruction for the plaintiff below the clause, "within the apparent scope of the business of the firm," was not qualified by adding, "at the time and place where said business was carried on," which it is said would have directed the minds of the jury to Indiana, where the firm had places of business. But Reeme had no business with them there. Whatever business he had with the Wolcotts, as to this case, was justified, if at all, by the conversation between Anson Wolcott and Reeme, and by other transactions in which Anson participated. Irwin v. Williar, 110 U. S. 499, cited against the instruction, has no application; and besides, at the request of the defendant below, the jury were in effect carefully instructed that if dealing in grain for future delivery was not a part of the home business of the firm, and the rye transaction was not authorized by Anson Wolcott, Reeme could not recover.

Second. The court refused to instruct the jury that "if the methods adopted by the plaintiff" * * * "are so intricate and tortuous that they are incapable of being explained to the full comprehension of the jury," the verdict

should be against him. For this instruction the language of the opinion in Oldershaw v. Knowles, 101 Ill. 117, is cited. But the language of an argument of the Supreme Court in one case, is not necessarily proper language for an instruction to the jury in another. Fairbury v. Rogers, 98 Ill. 554; C. & N. W. Ry. v. Moranda, 108 Ill. 576. Nor did the Supreme Court say "to the full comprehension of the jury," but of ordinarily intelligent men; which a particular jury may or may not be. A rule of law which would prevent double entry bookkeeping can not be right, though at the bar I once tried a case before a judge and jury where nobody but one adverse witness who kept the books by that system, and myself, knew what they meant.

There is no error and the judgment is affirmed.

*Judgment affirmed.*